

$4400

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID LAWRENCE, Individually And On Behalf Of All Others Similarly Situated, | **17    2758**<br><br>Case No. _____ |
| Plaintiff, | **Judge** |
| v. | **CLASS ACTION** |
| VWR CORPORATION, MANUEL A.H. BROCKE-BENZ, HARRY M. JANSEN KRAEMER, JR., NICHOLAS W. ALEXOS, ROBERT L. BARCHI, EDWARD A. BLECHSCHMIDT, ROBERT P. DECRESCE, PAMELA FORBES LIEBERMAN, TIMOTHY P. SULLIVAN, and ROBERT J. ZOLLARS, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 14A-9**<br><br>**JURY DEMAND** |
| Defendants. | |

Plaintiff David Lawrence ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and all other similarly situated public shareholders of VWR Corporation ("VWR" or the "Company") against VWR and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between VWR, and

Avantor, Inc. ("Avantor"), a global supplier of ultra-high-purity materials for the life sciences and advanced technology markets. The Proposed Merger will be accomplished through acquisition entities, Vail Acquisition Corp, a Delaware corporation and a wholly-owned subsidiary of Avantor ("Merger Sub"), and New Mountain Capital L.L.C. ("New Mountain"), a private equity investment firm.

2.    On May 5, 2017, VWR and Avantor jointly announced that they had reached a definitive Agreement ("Merger Agreement") under which Avantor will acquire VWR for $33.25 in cash per share of VWR common stock ("Merger Consideration"), reflecting an enterprise value of $6.4 billion (the "Proposed Merger").

3.    Defendants have violated the above-referenced Sections of the Exchange Act by filing a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC on June 1, 2017. The Board recommends that VWR's shareholders vote in favor of the Proposed Merger at a forthcoming shareholder special meeting, and agree to exchange their shares pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and the opinion rendered by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

4.    While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

2

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the Company's financial projections; and (ii) the valuation analyses performed by BofA Merrill Lynch.

6.      For these reasons and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100. Plaintiff seeks to enjoin Defendants from proceeding with the shareholder vote on the Proposed Merger unless or until the Proxy is corrected to address the materially misleading information alleged herein, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

7.      Thus, it is imperative that the relief requested herein be granted prior to the special meeting to ensure that VWR's shareholders can make an informed decision on how to vote their stock regarding the Proposed Merger.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, a shareholder of VWR common stock.

9.      Defendant VWR is a Delaware corporation, with its principal executive offices located at 100 Matsonford Road, Radnor, Pennsylvania 19087. VWR provides product and service solutions to laboratory and production customers, and offers a portfolio of branded and private label laboratory products, services and solutions to the life science, general research and applied markets, including the biopharma, agricultural, chemical, environmental, food and beverage, healthcare, microelectronic and petrochemical industries, as well as governmental agencies, universities, primary education and research institutes and environmental organizations. VWR is listed on the NASDAQ under the symbol "VWR."

3

10.     Individual Defendant Manuel A.H. Brocke-Benz has served as President and Chief Executive Officer ("CEO") of VWR since January 2013 and has served as a director of the Company since 2012.

11.     Individual Defendant Harry M. Jansen Kraemer, Jr. is Chairman of the Board and has served as a director of the Company since 2007.

12.     Individual Defendant Nicholas W. Alexos has served as a director of the Company since 2007.

13.     Individual Defendant Robert L. Barchi has served as a director of the Company since 2006.

14.     Individual Defendant Edward A. Blechschmidt has served as a director of the Company since 2007.

15.     Individual Defendant Robert P. DeCresce has served as a director of the Company since 2007.

16.     Individual Defendant Pamela Forbes Lieberman has served as a director of the Company since 2009.

17.     Individual Defendant Timothy P. Sullivan has served as a director of the Company since 2007.

18.     Individual Defendant Robert J. Zollars has served as a director of the Company since 2006.

19.     The Individual Defendants and VWR may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the

4

liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21.     Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) VWR maintains its principal executive offices in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of VWR (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This Action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable. As of May 24, 2017, there were approximately 131,798,400 issued and outstanding shares of VWR common stock. Proxy, Preface, p. 81. All members of the Class may be identified from records maintained

5

by VWR or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger, including the Board's bases for recommending stockholders vote in favor of the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act and SEC Rules and Regulations including Rule 14a-9; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their units regarding the Proposed Transaction based on the false and/or misleading Proxy.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, Plaintiff have the same interests as the other members of the Class, and Plaintiff do not have any interests that are adverse to the Class. Accordingly, Plaintiff is adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, injunctive relief on behalf of the Class is appropriate.

6

## SUBSTANTIVE ALLEGATIONS

### I.     Background of the Proposed Merger

30.     VWR touts itself as a provider of product and service solutions to laboratory and production customers.  The Company offers a portfolio of branded and private label laboratory products, services and solutions to the life science, general research and applied markets, including the biopharma, agricultural, chemical, environmental, food and beverage, healthcare, microelectronic and petrochemical industries, as well as governmental agencies, universities, primary education and research institutes and environmental organizations.  The Company operates in two segments: Americas and EMEA-APAC.  The Americas segment consists of operations located principally in the United States and Canada, as well as in Puerto Rico, Mexico and select countries in Central and South America, including Costa Rica, Brazil, Argentina and Chile.  As of December 31, 2016, the Americas segment included 67 facilities located in eight countries.  As of December 31, 2016, the EMEA-APAC segment consisted of its operations located principally in Europe, as well as in certain Asia-Pacific countries, and included 110 facilities located in 26 countries.    www.reuters.com/finance/stocks/companyProfile?symbol= VWR.O.

31.     The Company's portfolio includes chemicals, reagents, consumables, durable products and scientific equipment and instruments.  Consumable products include chemicals, laboratory and production supplies and science education products.  The Company's branded and private label product portfolio includes service offerings marketed under the VWRCATALYST brand, including sourcing and procurement, logistics, chemical and equipment tracking and sample management.  In addition to procurement, logistics, chemical and equipment tracking and glassware autoclaving, it offers scientific research support services, such as deoxyribonucleic acid

7

(DNA) extraction, bioreactor servicing, compound management and customized kit assembly. In addition, it offers custom manufacturing solutions, including buffers, reagents, active pharmaceutical ingredients, high purity ingredients, ultra-pure acids and other chemicals used in biopharmaceutical and industrial applications and production processes. www.reuters.com/finance/stocks/companyProfile?symbol=VWR.O.

32.     As described in the Proxy, on March 30, 2017, the Company received an indication of interest letter from Avantor and New Mountain at a potential acquisition price of $30 per share. Based on the Board's prior discussions regarding the Board's review of a potential purchaser referred to as "Party A" in the Proxy, Defendant Kraemer informed Avantor and New Mountain that the price per share offered to VWR was not a basis for further discussion.

33.     Subsequently, on March 31, 2017, VWR received a revised indication of intertest letter from Avantor and New Mountain at a potential acquisition price of $30 to $32 per share. That same day, after discussion of the latest proposal from Avantor and New Mountain, the Board authorized management to enter into a nondisclosure and standstill agreement with Avantor and New Mountain.

34.     On April 2, 2017, VWR entered into a nondisclosure agreement with Avantor and New Mountain. After subsequent negotiation, on April 13, 2017, VWR received an updated indication of interest from Avantor and New Mountain reflecting an increased offer price of $33.25 per share.

35.     On May 3, 2017, the trading price of VWR common stock rose above the negotiated merger price following the publication of market speculation of a sale of VWR to New Mountain. Representatives of BofA Merrill Lynch contacted Avantor and New Mountain to press for a further

price increase to $33.75 per share but were told that $33.25 per share was the best and final price

that Avantor and New Mountain would offer.

36.    Ultimately, on May 4, 2017, the Board unanimously resolved, among other things

to approve the Proposed Merger.  On May 5, 2017, VWR and Avantor issued a joint press release

announcing the Proposed Merger which stated the following, in relevant part:

> Center Valley, PA and Radnor, PA, May 5, 2017 – Avantor, a global supplier of
> ultra-high-purity materials for the life sciences and advanced technology industries,
> and VWR (NASDAQ: VWR), the major global independent provider of product,
> supply chain, and service solutions to laboratory and production customers, today
> announced that they have entered into a definitive agreement under which Avantor
> will acquire VWR for $33.25 in cash per share of VWR common stock, reflecting
> an enterprise value of approximately $6.4 billion.  The purchase price represents an
> approximate 17% premium to the unaffected closing stock price on May 2, 2017,
> the day prior to the start of market speculation regarding a potential sale of VWR.
> The purchase price also represents an approximate 20% premium to the 30 trading
> day volume weighted average price (VWAP), and an approximate 24% premium
> to the 90 trading day VWAP of VWR common stock as of May 2, 2017.

> *Combined Company Uniquely Positioned to Serve Customers Globally*

> Avantor's acquisition of VWR will create a major consumables-focused solutions
> and services provider to the high-growth life sciences and advanced technologies
> industries, as well as education, government, and research institutions across the
> globe.  The acquisition will build on each company's strengths, including Avantor's
> cGMP manufacturing processes, significant exposure to emerging markets and
> VWR's significant position across the Americas and Europe.   The combined
> company will be a vertically integrated organization, serving a global customer
> base in all areas of their activities, from research through production – a unique
> advantage in a fast growing marketplace.

> Michael Stubblefield, Chief Executive Officer of Avantor, said, "Avantor's
> acquisition of VWR is both highly compelling and complementary.  We will bring
> together our well-known expertise in ultra-high-purity materials and customized
> solutions with VWR's global scale, unparalleled channel access, and deep customer
> relationships.  Collectively, this will create a larger, stronger and more diversified
> company with significantly enhanced scale and product breadth.   The global
> customers that we plan to serve in a more high-touch manner will immediately
> benefit from the combination, as we will provide end-to-end solutions that offer
> increased quality, effectiveness, and productivity."

9

Mr. Stubblefield continued, "Avantor and VWR share a dedication to enabling the advancement of science worldwide and a commitment to quality, safety, innovation and customer service.

Both of our companies have highly qualified employees who are dedicated to helping our customers succeed. We look forward to welcoming VWR's more than 10,000 employees to Avantor and to our continued success as one team upon the successful completion of the transaction. We expect that this acquisition will expand opportunities for our employees, as part of a larger, high-growth enterprise."

### *Agreement Reflects VWR's Strong Performance*

Manuel Brocke-Benz, President and Chief Executive Officer of VWR, commented, "Since our IPO, VWR has made significant progress executing on our strategy to drive organic growth, and the first quarter 2017 results that we will announce today clearly show that VWR's growth story remains on track. Given the changing dynamics in the highly fragmented and diverse life sciences sector, we believe that combining Avantor's advanced materials and solutions with VWR's unparalleled distribution capabilities and breadth of offerings represents a compelling value proposition. I am confident that this acquisition will create a highly differentiated organization, one that is uniquely positioned to serve the growing needs of laboratory and production customers around the world."

### *New Mountain Capital to Continue as Lead Shareholder of the Combined Company*

Matt Holt, Managing Director at New Mountain Capital, said, "We believe this combination creates significant value for all stakeholders including customers, partners and the employees. The combined company will have a strong position as a vertically integrated, global player in manufacturing and supply chain solutions for the life sciences, advanced technologies, and research industries."

The agreement followed the unanimous approval by the Board of Directors of both VWR and Avantor. Completion of the transaction is subject to the expiration of a "go-shop" period, the expiration or termination of the applicable waiting period under Hart-Scott-Rodino Antitrust Improvements Act and European Commission approval, obtaining any required clearance, consent or approval under applicable foreign antitrust laws, VWR shareholder approval, and other customary closing conditions. Varietal Distribution Holdings, LLC, the largest shareholder of VWR comprised of, among other parties, Madison Dearborn Partners (MDP), which has been a significant shareholder of VWR since 2007, and certain officers and directors of VWR, has signed a voting and support agreement committing it to vote in favor of the transaction, representing approximately 34.8% of the total issued and outstanding shares of common stock of VWR.

Following the closing of the acquisition, which is expected in the third quarter of 2017, New Mountain Capital will be the lead shareholder of the combined company, and MDP will not own any shares of common stock of the combined company. The combined company will be led by Mr. Stubblefield upon closing.

## II.    The Merger Consideration Appears Inadequate in Light of VWR's Recent Financial Performance and Growth Prospects

37.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  Indeed, VWR reported strong financial results for the first quarter of fiscal year 2017.  Specifically, in a press release issued on May 5, 2017, the Company reported, among other things: (i) first quarter record quarterly net sales of $1.14 billion, a 3.7% increase on a year-over-year basis; (ii) quarterly Adjusted earnings per share ("EPS") of $0.44, a 10% increase compared to $0.40 in the prior year quarter; and (iii) operating income of $81.5 million, a $1.8 million increase compared to the prior year.

38.     Further, in the May 5, 2017 press release regarding VWR's quarterly earnings for the first quarter of 2017, Defendant Brocke-Benz stated the following:

> "The first quarter represents a strong start to the year, bolstered by our solid business momentum in EMEA-APAC and improving performance in the Americas. During the first quarter, organic revenues increased 4.3%, with EMEA-APAC up 8.4%. Our solid revenue momentum, coupled with our adjusted operating income margin expansion, drove strong bottom-line performance."

> Mr. Brocke-Benz continued: "We recently acquired EPL Archives and MESM, both of which significantly expand and strengthen our VWRCATALYST services platform.  With these acquisitions, we continue to build a significant business that provides a compelling proposition to biopharma customers engaged in clinical trials activities.  And earlier in the quarter, we acquired Seastar, a global quality leader in manufacturing ultra-pure acid and base products used for detecting trace elements for environmental, food and semiconductor analysis and testing.  These acquisitions are an important part of our strategy to increase customer intimacy and relevance in these key growth areas."

39.     In sum, it appears that VWR is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy,

discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**III.     The Incomplete and Materially Misleading Proxy**

40.     On June 1, 2017, Defendants filed the false and/or misleading Proxy with the SEC. The information contained in the Proxy was disseminated to VWR's stockholders with the false and/or misleading material information that will be used to solicit stockholder votes in favor of the Proposed Merger.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

41.     First, the Proxy fails to provide material information concerning the Company's financial projections that were relied on by the Individual Defendants as a basis to recommend the Proposed Merger to stockholders (see Proxy at 33- 35, "Reasons for the Merger")[1] (Proxy at 35-37, "Certain Prospective Financial Information"), and BofA Merrill Lynch in rendering its fairness opinion (Proxy at 37- 40, "Opinion of the Company's Financial Advisor").  Specifically, the Proxy discloses forecasted non-GAAP (generally accepted accounting principles) financial metrics, Adjusted EBITDA and Adjusted EPS, but fails to provide the projected line item metrics used to

---

[1]     As the Proxy expressly discloses, the Individual Defendants relied on "The Board's understanding of the Company's business, assets, financial condition, results of operations, competitive position and historical and projected financial performance, as well as the business, economic and regulatory environment."  Proxy at 33.

calculate these non-GAAP measures (or otherwise fails to disclose the manner in which Adjusted
EBITDA and Adjusted EPS were calculated) and fails to reconcile the non-GAAP projections to
the most comparable GAAP measures as required. Proxy at 37.

42.     When a company discloses non-GAAP financial measures in a Proxy, the Company
must also disclose all projections and information necessary to make the non-GAAP measures not
misleading, and must provide a reconciliation (by schedule or other clearly understandable
method) of the differences between the non-GAAP financial measure disclosed or released with
the most comparable financial measure or measures calculated and presented in accordance with
GAAP. 17 C.F.R. § 244.100.

43.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial
measures in communications with shareholders. The former SEC Chairwoman, Mary Jo White,
recently stated that the frequent use by publicly traded companies of unique company-specific
non-GAAP financial measures (as VWR included in the Proxy here), implicates the centerpiece of
the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the
> GAAP information, has become the key message to investors, crowding out and
> effectively supplanting the GAAP presentation.     Jim Schnurr, our Chief
> Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation
> Finance and I, along with other members of the staff, have spoken out frequently
> about our concerns to raise the awareness of boards, management and investors.
> And last month, the staff issued guidance addressing a number of troublesome
> practices *which can make non-GAAP disclosures misleading*: the lack of equal or
> greater prominence for GAAP measures; exclusion of normal, recurring cash
> operating expenses; individually tailored non-GAAP revenues; lack of consistency;
> cherry-picking; and the use of cash per share data. I strongly urge companies to
> carefully consider this guidance and revisit their approach to non-GAAP
> disclosures. I also urge again, as I did last December, that appropriate controls be
> considered and that audit committees carefully oversee their company's use of non-
> GAAP measures and disclosures.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual
Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

13

44.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

45.     Specifically, the Proxy fails to reconcile Adjusted EBITDA and Adjusted EPS to their most comparable GAAP metrics.   Stockholders must be informed as to their specific differences (e.g. stock-based compensation) between the non-GAAP metrics disclosed and utilized by the Board and BofA Merrill Lynch.   The failure to disclose the manner in which the Company's projected Adjusted EBITDA and Adjusted EPS were determined and the failure to reconcile and explain these differences renders VWR's Projections in the Proxy violates SEC reporting regulations including Regulation G, and renders the Proxy false and/or misleading.

46.     In order to make these financial projections on page 37 of the Proxy not materially complete and not misleading, Defendants must provide a reconciliation table of all disclosed non-

---

*GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016),           https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[4] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures. Those line item projections that were utilized to calculate Adjusted EBITDA include (i) interest expense, net of interest income, (ii) income tax provision or benefit, (iii) depreciation and amortization, (iv) net foreign currency remeasurement gains or losses relating to financing activities, (v) losses on extinguishment of debt, (vi) equity offering costs, (vii) charges associated with restructurings and other cost reduction initiatives, (viii) impairment charges, (ix)gains or losses upon business disposals, (x) share-based compensation expense and (xi) other costs or credits that are either isolated or cannot be expected to recur with any regularity or predictability. Adjusted EPS was calculated based on the Company's net income, adjusted for certain items, divided by the Company's fully diluted weighted average shares outstanding as determined under GAAP. For the purposes of calculating adjusted net income, the Company's net income or loss is first adjusted for the following items: (i) amortization of acquired intangible assets, (ii) net foreign currency remeasurement gains or losses relating to financing activities, (iii) impairment charges, (iv) losses on extinguishment of debt, (v) equity offering costs, (vi) income from changes to estimated fair value of contingent consideration, and (vii) other costs or credits that are either isolated or cannot be expected to recur with any regularity or predictability. After those adjustments, the Company then adds or subtracts an assumed incremental income tax impact on the above noted pre-tax adjustments, using estimated tax rates and any other tax items that are either isolated or cannot be expected to recur with any regularity or predictability. Proxy at 36.

47.     Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.

15

48.     In fact, the Defendants acknowledge the materially incomplete and misleading nature of said non-GAAP measures in the Proxy: "Certain of the measures included in the Projections may be considered non-GAAP financial measures.  Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled amounts used by other companies."  Proxy at 36-37.  Despite disclosing the misleading and materially incomplete nature of non-GAAP financial measures, Defendants fail to reconcile the non-GAAP measures disclosed in the Proxy.

49.     The Proxy also fails to provide sufficient information for stockholders to assess the valuation analyses performed by BofA Merrill Lynch in support of its fairness opinions.

50.     With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis*, the Proxy states that "BofA Merrill Lynch performed a discounted cash flow analysis of VWR to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that VWR was forecasted to generate from the second fiscal quarter of 2017 through fiscal year 2022 based on the VWR management forecast."  Proxy at 40.  Notably, the Proxy: (i) fails to provide a definition for unlevered, after-tax free cash flows; (ii) fails to disclose a reconciliation of unlevered, after-tax free cash flows to its most comparable GAAP metric; and (iii) fails to provide the underlying line items used to calculate unlevered, after-tax free cash flows.

51.     These key inputs are material to VWR shareholders, and their omission renders the summary of BofA Merrill Lynch's Discounted Cash Flow Analysis, on page 39-40 of the Proxy, incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's

16

forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . ." *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars . . . This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices.</u> The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

52.     As a result of these omissions, stockholders are unable to properly assess and weigh BofA Merrill Lynch's discounted cash flow analysis---generally considered the most useful analysis.

53.     The omission of such information renders the summaries of these valuation analyses on page 40 of the Proxy misleading.

54.     With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose the mean and median multiples for Adjusted EBITDA and EPS and/or the multiples for each of the companies selected for this analysis. As a result of these omissions, stockholders are unable to determine whether the reference multiple ranges selected by BofA Merrill Lynch for this valuation is reasonable. The omission of this information renders the analysis on page 39 of the Proxy materially misleading. In determining these multiples, BofA Merrill Lynch adjusted EPS for stock-based compensation expense ("SBC"), but the SBC expense

17

is not disclosed, and it must be disclosed.  Proxy at 39. The omission of this information renders the analysis on page 3 of the Proxy materially misleading.

55.      With respect to BofA Merrill Lynch's *Selected Precedent Transaction Analysis*, the Proxy fails to disclose the mean and median multiples for LTM Adjusted EBITDA as well as the individual multiples for each of the transactions selected for this analysis.  As a result of these omissions, stockholders are unable to determine whether the reference multiple ranges selected by BofA Merrill Lynch for LTM Adjusted EBITDA is reasonable.  The omission of this information renders the analysis on page 40 of the Proxy materially misleading.  Proxy at 40.

56.      In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in violation of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I
### Claim for Violations of Section 14(a) of the
### Exchange Act Against All Defendants

57.      Plaintiff repeats and realleges each allegation set forth herein.

58.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure ... not misleading.*" 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

61.     The omission of information from a Proxy violates Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

62.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other

19

things: (i) financial projections for the Company and (ii) the valuation analyses performed by BofA Merrill Lynch.

63.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

64.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that BofA Merrill Lynch reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by BofA Merrill Lynch as well as its fairness opinion and the assumptions made and matters considered in connection therewith.

65.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

66.     VWR is deemed negligent as a result of the Individual Defendants' negligence in preparing, reviewing and filing the Proxy.

67.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

68.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II
**Claims for Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants**

69.     Plaintiff repeats and realleges each allegation set forth herein.

70.     The Individual Defendants acted as controlling persons of VWR within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the VWR, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

71.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

73.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy;

22

C.      Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      In the event Defendants consummate the Proposed Merger, awarding damages to Plaintiff and the Class;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 14, 2017

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (*Pro Hac forthcoming*)
Nadeem Faruqi
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

**FARUQI & FARUQI, LLP**

By: _____
Stuart J. Guber
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: sguber@faruqilaw.com

*Counsel for Plaintiff*

23

JS 44 (Rev. 06/17)

**CIVIL COVER SHEET**

17-cv-2758

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Lawrence, David | VWR Corporation; Brocke-Benz, Manuel A.H.; Jansen Kraemer, Jr., Harry M.; Alexis, Nicholas W.; Barchi, Robert L.; Blechschmidt, Edward A.; DeCresce, Robert P.; Lieberman, Pamela Forbes; Sullivan, Timothy P. and Zellars, Robert J. |

| **(b)** County of Residence of First Listed Plaintiff | New York County, NY | County of Residence of First Listed Defendant | Delaware County, PA |
|---|---|---|---|
| | *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | | NOTE: | IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600, Jenkintown, PA 19046
(215) 277-5770

Attorneys *(If Known)*

---

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

---

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a)
Brief description of cause:
Violation of Securities Exchange Act in Acquisition of VWR Corporation

| **VII. REQUESTED IN COMPLAINT:** | ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE Hon Wendy Beetlestone | DOCKET NUMBER 17-cv-02616 |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD | |
|---|---|---|
| 06/14/2017 | /s/ Stuart J. Guber | JUN 14 2017 |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

JS 44 Reverse  (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



**17   2758**

### UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:   David Lawrence, c/o Faurqi & Faruqi, LLP, 685 Third Ave., 26th Floor, New York, NY 10017

Address of Defendant:   VWR Corporation, 100 Matsonford Road, Radnor, PA 19087

Place of Accident, Incident or Transaction:   Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number:  17-cv-02616          Judge  Hon. Wendy Beetlestone          Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,   Stuart J. Guber          , counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE:  06/20/2017          _____          #60772
                              Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  06/20/2017          _____          #60772
                              Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

David Lawrence, Individually And On
Behalf Of All Others Similarly Situated,

                v.

VWR Corporation; Manuel A.H. Brocke-Benz, Harry M. Jansen
Kraemer, Jr., Nichola W. Alexos, Robert L. Barchi, Edward A.
Blechschmidt, Robert P. DeCresce, Pamela Forbes Lierberman,
Timothy P. Sullivan, and Robert J. Zollars

CIVIL ACTION

**17    2758**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)     (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| | | |
|---|---|---|
| June 14, 2017 | Stuart J. Guber | David Lawrence |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 277-5770 | (215) 277-5771 | sguber@faruqilaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02